owing to any negligence on the part of the tug, but arose from the fact that the line was frozen to such an extent that it could not be securely fastened; that notice of this fact was given by the crew of the tug to the crew of the schooner before the service was undertaken; that the crew of the tug gave their best efforts to the service, and that the tug fulfilled every requirement incumbent upon it for the safe performance of its duty. The same conclusions are arrived at in the findings made by this court. Under the circumstances of this case, the contract between the parties was only that the tug should do her best with the frozen line. She was tendered a frozen line; she asked for a better one; she was told that that was the only one there was, and she was substantially told to do the best she could with it; she did the best she could with it, and there her duty terminated. It was not her duty to have a better line, or an unfrozen line, or to see that the line was in a different condition from its actual condition. Any duty incumbent upon her in that regard was discharged by her objections distinctly made to the frozen line, out of which arose the contract that the tug should do the best that could be done with the use of the frozen line. Libel dismissed.

---

MOORE (DEVIGNY v.). See Case No. 3,-838.

---

## Case No. 9,757.

### MOORE v. DOVE.

[1 Hayw. & H. 161.] [1]

Circuit Court, District of Columbia. Dec. 7, 1843.

LANDLORD AND TENANT—PROPERTY RENTED FOR ANOTHER—LIABILITY.

Where a party agreed to rent certain premises and pay the rent for another, he will be liable for the rent without occupying the premises.

[This was an action by James Moore, Sr., against William T. Dove.]

J. Hellen, for plaintiff.
Jos. H. Bradley, for defendant.

This suit was brought for a year's rent of premises owned by the plaintiff. The declaration contained two counts. The first count alleged that the defendant occupied, possessed and enjoyed the said premises, and promised to pay the said rent. The second count that he, the defendant, promised to pay to the plaintiff for the premises, as much as the premises were worth, for the use and occupation and possession of said premises; and that he, the defendant, has not paid any part of the rent due. The plea of the defendant was non-assumpsit. Issue was joined, and the jury brought in a verdict for the plaintiff for $92.12. The defendant, by his attorney, moved for a new trial: Because the action

was brought for the use and occupation of a tenement, and the only proof offered was that the defendant agreed to rent the same and pay the said rent for another person, and not for his own use, and that he never did occupy the same himself. The defendant, through his attorney, objected to the admissibility of said evidence in this action, but THE COURT overruled the objection, and instructed the jury if they believe the evidence the plaintiff was entitled to recover.

Motion for new trial overruled and judgment entered on the verdict.

---

MOORE (DRIGGS v.). See Case No. 4,083.

---

## Case No. 9,758.

### MOORE v. DULANY.

[1 Cranch, C. C. 341.] [1]

Circuit Court, District of Columbia. July Term, 1806.

TRIAL — PRODUCTION OF DEPOSITIONS — PRIVATE AGREEMENT BETWEEN COUNSEL.

The court will not compel the opposite party to produce depositions taken by consent, nor enforce the private agreements of counsel, but will see that parties are not entrapped by such agreements.

Assault and battery.

Mr. Youngs, for defendant, stated to the court that the plaintiff had, by consent of defendant's counsel, taken the deposition of Mrs. Hodge and Mrs. May, and he now called upon the plaintiff to produce them, and prayed the court to compel the plaintiff to produce them. But THE COURT refused, there being no consent entered on record, and the court cannot undertake to enforce the private agreements of counsel, they must depend upon the honor of each other. The court will not suffer a party to be entrapped by such agreements. Verdict for the plaintiff, one cent.

---

## Case No. 9,759.

### MOORE v. DUNLOP.

[1 Cranch, C. C. 180.] [1]

Circuit Court, District of Columbia. July Term, 1804.

JUDGMENT—WRIT OF ERROR—WHEN ACTS AS SUPERSEDEAS.

A writ of error is not a supersedeas unless a copy of the writ be filed in the clerk's office for the adverse party, according to the 23d section of the judiciary act of 1789 [1 Stat. 85].

[This was a suit by Thomas Moore, use of W. Oxley, against Henry Dunlop.] Motion to quash the execution, it having issued before mandate, and after writ of error filed and citation issued. The judgment was rendered on the 6th of January, 1804. The writ of error was filed on the 13th of Janu-

---

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

ary. The bond and citation were filed in supreme court office on the 14th of January. The execution issued on the 2d of July, 1804, and the mandate was filed on the 7th of August, 1804. See Acts Sept. 24, 1789 (1 Stat. 73), § 22, and Feb. 27, 1801, § 8 (2 Stat. 106). No copy of the writ of error was filed in the clerk's office for the adverse party, according to the 23d section of the judiciary act of 1789 (1 Stat. 85), and on that ground THE COURT refused to quash the execution.

KILTY, Chief Judge, absent.

---

MOORE v. The FASHION. See Case No. 9,772.

---

## Case No. 9,760.

MOORE et al. v. FOSTER et al.

[Chase, 222.] [1]

Circuit Court, D. Virginia. May Term, 1868.

REBELLION—NOTE DRAWN WITHIN CONFEDERATE STATES—ACCEPTED IN SATISFACTION OF DEBT.

1. Any draft, bill, or note drawn in the Confederate States, or in any state, under the proclamation of the president declared in insurrection, or in any part of them (except such part as was permanently and absolutely under the control of the forces of the United States), upon any person or persons in the Federal lines, was absolutely void as to the maker and all other parties thereto, and was not to be received in payment or satisfaction of any debt due to a citizen of a state adhering to the government.

2. When such a draft has been received, the jury must be satisfied upon good evidence that it was accepted in satisfaction of the debt.

In 1860, Foster & Moore of Norfolk, owed Moore & Brother of Baltimore, nine hundred and twenty dollars, due by negotiable notes, which fell due during the occupation of Norfolk by the Confederate army. After the evacuation of that city, Moore & Brother came to Norfolk, and Foster & Moore agreed to pay the amount of their liabilities to them in Virginia money, i. e., the bills of Virginia banks. Foster & Moore then bought a draft for one thousand dollars, drawn by the Bank of Windsor, N. C., on the Bank of Portsmouth, Va. This draft was endorsed by Maury & Co., Smith of Norfolk, and other responsible parties, and made payable to the order of Moore & Brother, to whom it was sent. They neglected to have the draft presented, and some two months afterward the Bank of Portsmouth ran its assets into the Confederate lines. They held the draft until 1867, and it was never paid. Under these circumstances, Moore & Brother brought suit upon the original notes, and tendered the draft back to Foster & Moore, who refused to receive it.

Gilmer & Son, for plaintiffs.

Mr. Guigon and John Howard, for defendants.

CHASE, Circuit Justice, instructed the jury as follows: 1st. That any draft, bill, or note

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

drawn in the Confederate States, or in any state under the proclamation of the president declared in insurrection, or in any part of them (except such part as was permanently and absolutely under the control of the forces of the United States), upon any person or persons in the Federal lines, was void as to the maker and all other parties thereto, and was not to be received in payment of any debt when due to a citizen of any state adhering to the government; but there being a question as to whether the Bank of Windsor was, at the time this draft was drawn, in the Federal or Confederate lines, that question was for the jury to determine. 2nd. That the jury must be satisfied that the plaintiffs accepted this draft in satisfaction of the debt due them, upon good evidence.

The jury failed to agree.

---

MOORE (FOSTER v.). See Case No. 4,978.

---

## Case No. 9,761.

MOORE v. FOWLER et al.

[Hempst. 536.] [1]

Circuit Court, D. Arkansas. May, 1847.

CONSTITUTIONAL LAW—SALE UNDER EXECUTION—APPRAISING PROPERTY—CONTRACTS MADE BEFORE PASSAGE OF LAW.

1. A state law, providing that a sale shall not be made of property under execution unless it will bring two thirds of the valuation affixed to it by three householders, is unconstitutional and void, as to contracts made before its passage. McCracken v. Hayward, 2 How. [43 U. S.] 608.

2. But such a law is valid as to contracts made after its passage, because the laws in existence at the time are necessarily referred to, and form a part of the contract, as effectually as if incorporated in it.

3. Motion to quash appraisement, overruled.

[Action by Alexander D. Moore against Absalom Fowler, Felix G. Secrest, Lewis Snapp, and William Brown, Jr.] Motion to quash appraisement, and the return of the marshal on execution.

George C. Watkins and J. M. Curran, for plaintiff.

A. Fowler, for himself and other defendants.

JOHNSON, District Judge. In the case of McCracken v. Hayward, 2 How. [43 U. S.] 608, the supreme court of the United States have established the doctrine, that a state law, providing that a sale shall not be made of property levied on under an execution, unless it will bring two thirds of its valuation, according to the opinion of three householders, is unconstitutional and void. My opinion was different. U. S. v. Conway [Case No. 14,849]. But the rule established by the supreme court is the law of this court, and to which I shall always cheerfully conform, whatever may be my own views. But

[1] [Reported by Samuel H. Hempstead, Esq.]